IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ANDREW G., | * |
| Plaintiff, | * |
| vs. | * Civil Action No.   ADC-22-1979 |
| KILOLO KIJAKAZI, Acting Commissioner, Social Security Administration | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On August 9, 2022, Andrew G. ("Plaintiff" or "Claimant") petitioned this Court to review the Social Security Administration's ("SSA") final decision denying his claims for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). ECF No. 1 ("the Complaint"). Plaintiff and Defendant filed cross-motions for summary judgment (ECF Nos. 12, 14) on January 20, 2023 and March 21, 2023 respectively.[1] Plaintiff further responded in opposition to Defendant's motion on April 5, 2023. ECF No. 15. After considering the parties' motions, the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2021). For the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 12) is GRANTED as to remand and DENIED as to all other relief, Defendant's Motion for Summary Judgment (ECF No. 14) is DENIED, and the SSA's decision is REMANDED for further analysis in accordance with this opinion.

---

[1] On August 10, 2023, all parties consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302. *See* ECF No. 5. On April 28, 2023, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings.

1

## PROCEDURAL HISTORY

Plaintiff originally filed an application for SSI on May 8, 2020, alleging disability beginning April 29, 2020. ECF No. 8-3 at 23.[2] His claim was initially denied on November 24, 2020, and upon reconsideration on May 20, 2021. *Id.* Thereafter, Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held virtually on January 20, 2022. *Id.* On February 3, 2022, the ALJ rendered a decision finding that Plaintiff was not disabled under the Act. *Id.* at 36. Plaintiff then requested review of the ALJ's decision, which the Appeals Council denied on July 28, 2022. *Id.* at 2. Thus, the ALJ's decision became the final decision of the SSA. *See* 20 C.F.R. §§ 404.981, 416.1481; *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). On August 9, 2022, Plaintiff filed a Complaint in this Court seeking judicial review of the SSA's denial of his disability application. ECF No. 1.

## STANDARD OF REVIEW

This Court may review the SSA's denial of benefits under 42 U.S.C. § 405(g). *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court's review of an SSA decision is deferential: "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). *See Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."). The issue before the reviewing Court is whether the ALJ's finding of nondisability is supported by substantial evidence and based upon current legal standards. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a

---

[2] Although ECF No. 8 is independently paginated, this Opinion cites to the page numbers assigned by CM/ECF.

mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citations omitted). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In a substantial evidence review, the Court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citations omitted). Therefore, in conducting the "substantial evidence" inquiry, the Court must determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

To be eligible for DIB, a claimant must establish that she is under disability within the meaning of the Act. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

3

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows a five-step sequential evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920. *See Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). "If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments]" that is either expected to result in death or to last for a continuous twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509, 416.920(a)(4)(ii), 416.909. If not, the claimant is not disabled. At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, the claimant is considered disabled, regardless of her age, education, and work experience. *See Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(a)(4)(iv). Claimant's RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ

must consider even those impairments that are not "severe." 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. §§ 404.1529(a), 416.929(a). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b). Once the claimant makes that threshold showing, the ALJ must then evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). At this second step, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. *See generally* SSR 96-7p, 1996 WL 374186 (July 2, 1996). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *3. However, the ALJ may not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate them." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (quoting SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016) (citations omitted)). Requiring objective medical evidence to support the claimant's subjective evidence of pain "improperly increase[s] [her] burden of proof." *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017).

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. Claimant has the burden of proof during steps one through four of the evaluation. 20 C.F.R. §§ 404.1520, 416.920. *See Radford*, 734 F.3d at 291. However, at step five, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given her age, education, work experience, and RFC, and (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See Hancock*, 667 F.3d at 472–73. If the claimant can perform other work that exists in significant numbers in the national economy, she is not disabled. If the claimant cannot perform other work, she is disabled.

## THE ALJ'S DETERMINATION

The ALJ performed the sequential analysis and found at step one that Plaintiff has not engaged in substantial gainful activity since his application date, May 8, 2020. ECF No. 8-3 at 25. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, respiratory disorder, schizoaffective disorder, generalized anxiety disorder, antisocial personality disorder, post-traumatic stress disorder, and cocaine abuse. *Id.* at 25. The ALJ also found that he suffers from the following nonsevere impairments: hypertension, hyperlipidemia, hernia, degenerative disc disease, and degenerative joint disease. *Id.* at 26. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1. *Id.* at 26-29. The ALJ then determined that Plaintiff had the RFC

> to perform medium work as defined in 20 CFR 416.967(c) except he can frequently climb ramps and stairs; occasionally climb ladders, ropes or scaffolds; and

> frequently stoop, kneel, crouch or crawl. He can have no concentrated exposure to fumes and other pulmonary irritants. He is also limited to understanding, remembering and applying simple and routine instructions. He is further limited to attending and concentrating for extended periods with simple and routine tasks at work that is not at production rate pace (meaning no strict production requirements or rapid assembly line work where co-workers are side by side and the work of one affects the work of others). In addition, there can be only occasional interaction with the general public, co-workers and supervisors, simple, work related decisions and few changes in the routine work setting.

*Id.* at 29-34. At step four, the ALJ found that Plaintiff is unable to perform past relevant work as a short order cook. *Id.* at 34. Finally, at step five, the ALJ concluded that there are "jobs that exist in significant numbers in the national economy that claimant can perform" considering his age, education, work experience, and residual function capacity. *Id.* at 35. Thus, the ALJ concluded that Plaintiff was not disabled under the Act. *Id.*

## DISCUSSION

On appeal, Plaintiff argues that this Court should reverse, or in the alternative remand, the SSA's final decision because the ALJ's RFC assessment: (1) does not contain a function-by-function analysis based on his physical limitations and (2) erroneously assesses the impact of his mental impairments. ECF No. 12 at 14, 18. For the reasons explained herein, the Court finds that the ALJ adequately addressed Plaintiff's physical limitations but that remand is necessary as it is not clear that her determinations regarding Plaintiff's mental impairments are supported by substantial evidence.

A. <u>The ALJ's Function-by-Function Analysis</u>

Plaintiff first argues that the ALJ did not conduct a function-by-function analysis to determine how his impairments affect his ability to perform necessary physical exertional activities. ECF No. 12 at 14-18. While Plaintiff acknowledges that the ALJ reached conclusions regarding his "non-exertional functions" and "[o]ther abilities affected by impairments," he argues

7

that the ALJ did not explain how his nonsevere back and spine impairments limited his "exertional capacity, such as standing or lifting." ECF No. 12 at 17-18. Conversely, Defendant argues that the "substance" of the ALJ's report demonstrates that she did evaluate Plaintiff's ability to perform necessary physical exertional activities. ECF No. 14-1 at 6-7.

A claimant's RFC represents "the most [he] can still do despite [his] limitations. 20 C.F.R. § 416.945(a)(1). Social Security Ruling ("SSR") 96-8p, which provides the framework for evaluating a claimant's RFC, states:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, **the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule),** and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted) (emphasis added). In performing the function-by-function analysis, the ALJ must "build an accurate and logical bridge from the evidence to [her] conclusions." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

An ALJ's failure to perform a function-by-function analysis does not, however, necessarily warrant remand. *See, e.g., Trina L. v. Kijakazi*, No. BAH-22-1032, 2023 WL 3340439, at *3 (D.Md. May 10, 2023); *Timothy M. v. Kijakazi*, No. BAH-22-1246, 2023 WL 3280155, at *3 (D.Md. May 5, 2023). The United States Court of Appeals for the Fourth Circuit has held that a *per se* rule requiring remand when an ALJ fails to perform the function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

Instead, "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d. Cir. 2013) (per curiam)).

Here, the Court is unpersuaded that any omitted physical exertional functions were contested before the ALJ or relevant to the outcome of the claim. *See* ECF No. 8-3 at 25. The Court's review of the record in this case reveals that Plaintiff's claim was principally based on his mental health limitations. In his testimony before the ALJ, Plaintiff exclusively cited his mental health conditions as the reason he has been unemployed since April 2020. ECF No. 8-3 at 54-56. While Plaintiff did not—at any time—mention that physical impairments have kept him out of work, he testified that he "hear[s] voices" and that these voices cause him to "get [himself] put in jail or get [himself] hurt or fighting[.]" *Id.* at 55. Based on this evidence, and the medical evidence of record, at step-two of the sequential analysis, the ALJ determined that the majority of Plaintiff's severe impairments related to his mental health. *Id.* at 25. The ALJ found that any impairments related to Plaintiff's back and spine were "nonsevere," meaning that the "evidence does not establish that the effects of these conditions result in more than minimal limitations in the claimant's ability to perform work-related activities when properly treated and/or do not satisfy the durational requirement to be classified as severe impairments." *Id.* at 26. Because the medical records, hearing testimony, and ALJ Decision demonstrate that Plaintiff's claim was premised on his mental impairments, the Court finds that any alleged deficiencies in the ALJ's function-by-function analysis of Plaintiff's physical exertional abilities do not warrant remand.

Moreover, a close review of the ALJ's decision makes clear that the ALJ did meaningfully consider Plaintiff's ability to fulfill the physical demands of medium work. ECF No. 8-3 at 30-34.

The ALJ summarized several of Plaintiff's recent physical examinations which indicate that he has a "normal range of motion in the back," "normal gate and station," "functional range of motion in all limbs but increased back pain w[ith] elevation of arms over head," "no muscle asymmetry or joint deformity," and "good tone and bulk, full strength, and normal reflexes." *Id.* at 30-32. Based on this evidence, the ALJ concluded that Plaintiff "regularly has normal gate and station, generally functional range of motion, and does not treat for physical impairment other than respiratory medication." *Id.* at 32. The ALJ also considered Plaintiff's testimony that he provided care for his grandson for a time and that he is able to take the bus, do his own laundry, visit his family, and go to his providers regularly. *Id.* at 32. Based on this evidence, she found the reconsideration medical consultant's opinion that Plaintiff could perform medium exertional work "mostly persuasive" but found "unpersuasive" the State agency consultant's opinion that Plaintiff was limited to light exertional level work given that Plaintiff's "physical treatment has been minimal" and his examination findings were "grossly normal." *Id.* at 33.

In sum, the ALJ connected the evidence of record to the physical RFC determination such that the Court is able to conclude that her decision is supported by substantial evidence. *See Trina L.*, 2023 WL 3340439, at *4 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). Further, because Plaintiff has not sufficiently explained how a more detailed analysis of his physical exertional abilities would lead to a different result, any alleged error in formulating the physical components of Plaintiff's RFC was harmless. *See Mascio*, 780 F.3d at 636. Accordingly, the Court finds that remand on this ground is not appropriate.

B. The ALJ's Accommodations for Plaintiff's Mental Impairments

Plaintiff next argues that the ALJ failed to properly evaluate his mental limitations. ECF No. 12-1 at 18-20. If an ALJ determines that a claimant has a medically determinable mental

10

impairment, the ALJ must apply the "special technique" to determine the severity of the mental impairments. 20 C.F.R. § 404.1520a. Under the "special technique," the ALJ is required to rate the mental limitations in four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* at § 404.1520a(c)(3). The ALJ uses a five-point scale to rate a claimant's limitations in these functional areas: none, mild, moderate, marked, and extreme. *Id.* at § 404.1520a(c)(4). The rating is "based on the extent to which [the claimant's] impairment(s) interferes with [his/her] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.* at 404.1520a(c)(2).

Here, at step three, the ALJ found that Plaintiff has moderate limitations in all four functional areas. ECF No. 8-3 at 27-28. The ALJ concluded that Plaintiff has more than a mild limitation in concentrating, persisting, or maintaining pace as he "alleged difficulties in this functional area and is receiving PRP services." *Id.* at 28. However, a more severe rating was not warranted because of Plaintiff's "generally functional activities, and grossly normal mental status report findings." *Id.* To accommodate Plaintiff's moderate limitation, the ALJ incorporated the following RFC modification: "He is [] limited to attending and concentrating for extended periods with simple and routine tasks at work that is not at production rate pace (meaning no strict production requirements or rapid assembly line work where co-workers are side by side and the work of one affects the work of others)." *Id.* at 29.

On appeal, Plaintiff argues that the ALJ did not properly accommodate his limitations in concentrating, persisting, or maintaining pace as the RFC assessment does not address his "attention and concentration deficits." ECF No. 12-1 at 19-20. In particular, Plaintiff argues that there is no evidence that "work that is not at production rate pace . . . is a relevant or sufficient

11

accommodation for [his] severe mental impairments." *Id.* at 23. In response, Defendant argues that the "ALJ accounted for the mental limitations supported by the record." ECF No. 14-1 at 12.

This Court addressed a similar issue in *Megan M. v. Kijakazi*. No. CBD-19-3395, 2022 WL 19774, at *6 (D.Md. Jan 3, 2022). There, the Court determined that remand was necessary as the ALJ failed to explain how the claimant "could work at a sustained rate with the limitation—'the pace of productivity is not dictated by an external source over which [the plaintiff] has no control, such as conveyor belts.'" *Id.* Although the ALJ "extensively discussed [the plaintiff's] medical records, [] allegations and oral testimony, and opinion evidence," the Court concluded that meaningful review was frustrated because the ALJ failed to "provide the logical explanation required to bridge the gap between the evidence and the conclusion." *Id.* Similarly, in *Rena B. v. Kijakazi*, the ALJ concluded that the plaintiff "cannot work at a production rate pace." No. BPG-20-3709, 2022 WL 1714851, at *2 (D.Md. Jan 20, 2022). However, on appeal, this Court found that remand was warranted as "the ALJ did not explain why the assigned limitation to no work at a production rate pace would address this moderate limitation. Instead, the ALJ simply stated that plaintiff's record indicated 'consistently conservative treatment for her mental impairments.'" *Id.*

As in *Megan M.* and *Rena B.*, here, the ALJ discussed Plaintiff's medical records (including his mental health records), allegations and testimony, as well as opinion evidence in the narrative discussion portion of the decision. ECF No. 8-3 at 29-34. The ALJ subsequently offered the following explanation for her conclusion that Plaintiff could perform "simple and routine tasks at work that is not at a production rate pace":

> Based on the medical record, and the other documentary evidence, the claimant's testimony, the claimant's activities of daily living, and the opinions assessed, the claimant's residual functional capacity assessed is appropriate. However, consistent with the Federal Appeals Court's ruling in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), with regard to a finding of moderate limitation in concentration, persistence or pace, the undersigned is required to assess the extent to which this moderate

finding impacts on the claimant's ability to stay on task at an adequate pace for an eight hour work day, recognizing that a restriction to carrying out simple and routine tasks that are not performed at production rate pace does not on its face address all of those areas.

**For any possible persistence or concentration concerns not addressed fully by this restriction, regarding which there is little support for on this record, given the claimant's usually intact attention, concentration, and memory findings on mental status examination, the undersigned nonetheless notes that employees are generally entitled to breaks after every two hours of work.** It is further noted that, while breaks are typically allowed to employees, some employees do not take them, and others who take them do not necessarily need them to be able to refocus and stay on task. Should the claimant need breaks for any possible persistence or concentration concerns, they are available as a matter of course, and do not need to be addressed in the residual functional capacity. Therefore, the restriction provided in the residual functional capacity assessed adequately accounts for the claimant's moderate restriction in concentrating, persisting or maintaining pace.

Finally, it is noted that, while restrictions to carrying out simple and routine instructions and performing simple and routine tasks do not on their face address concentration, persistence or maintaining pace, a more thorough analysis shows that such restrictions do help in this area. As is commonly experienced, detailed work, such as that perhaps involving analyzing numbers and inputting numerical data into a system, is going to require better concentration for extended periods than, for example, buffing a floor, which allows for an individual's mind to wander to some degree, while still performing the buffing task adequately. As understood in this way, restrictions to carrying out simple and routine instructions and performing simple and routine tasks, when considered more deeply, do assist with concentration, persistence or maintaining pace limitations. Therefore, in the instant case, the restrictions to carrying out simple and routine instructions and performing simple and routine tasks are in part given to address the concentration, persistence or pace limitations, even though the claimant's moderate limitation in this area is addressed by the restriction to no production rate pace work, and a recognition that employees are entitled as a matter of course to breaks after every two hour increment of work.

*Id.* at 33-34 (emphasis added).[3] While I reject Plaintiff's contention that this explanation amounts

---

[3] Plaintiff argues that ALJ Self has used nearly identical language in other decisions and that the SSA has conceded that it amounts to "meaningless dicta." ECF No. 12 at 21-22. However, in the case cited by Plaintiff, *Shawn S. v. Kijakazi*, No. BAH-21-3180, 2022 WL 6200648, at *3-4 (D.Md. Oct. 7, 2022), the Plaintiff challenged only the third paragraph of the quoted language to argue that the ALJ rendered an improper "vocational opinion." The Court disagreed and found that "the ALJ addressed [the plaintiff's] impairments, accommodated them in the RFC, and then offered an arguably unnecessary explanation for one of those accommodations." *Id.* at 5.

13

to "meaningless dicta," I agree with Plaintiff that the ALJ did not—in this explanation or elsewhere in the decision—explain how she reached the conclusion that Plaintiff could perform work that is not at a production rate pace. ECF No. 8-3 at 29. The Fourth Circuit Court of Appeals has steadfastly held that "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by a 'narrative discussion describing [] the evidence' that supports it." *Dowling v. Comm'r, Soc. Sec. Admin*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019)); *see also Megan M.*, 2022 WL 19774, at *6; SSR 96-8p, 1996 WL 374184, at *7. Because the ALJ here failed to bridge the gap between the evidence and her conclusion that Plaintiff could persist at a non-production pace, the Court is unable to determine if her RFC assessment is supported by substantial evidence. Accordingly, the Court finds that remand is necessary. *See Thomas*, 916 F.3d at 311 ("[M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion.").

## Conclusion

The Court notes that Defendant's Motion is largely unresponsive to the issues presented by Plaintiff. ECF No. 14. While the filing recounts the evidence considered by the ALJ, it does not explain how the ALJ bridged the gap between the evidence and her conclusions. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). Based on the foregoing and pursuant to 42 U.S.C. § 405(g), Plaintiff's Motion for Summary Judgment (ECF No. 12) is GRANTED as to remand and DENIED as to all other relief. Defendant's Motion for Summary Judgment (ECF No. 14) is DENIED. The decision of the SSA is REMANDED for further proceedings consistent with this Opinion. A separate order will follow.

Date: 1 June 2023

A. David Copperthite
United States Magistrate Judge